UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-35-R

ROBERT McWHINNIE                                                          PLAINTIFF

and

BUILDERS ASSOCIATION OUTSTATE
INSURANCE PLAN                                          INTERVENING
                                                       PLAINTIFF

v.

UNITED STATES OF AMERICA                                          DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket #43). Plaintiffs have filed a response (Dockets #44, 47) to which Defendant replied (Docket #48). Plaintiff also filed a sur-reply (Docket #49) and Defendant filed a sur-sur-reply (Docket #50). Defendant has also filed a supplemental brief (Docket #53). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

On August 20, 2002, Plaintiff worked as an employee of Foley Construction, a construction company that contracted with the United States to upgrade the central energy plant at Fort Campbell, Kentucky. Foley Construction was instituting a new water and electrical transformation from the central energy plant which provided water to certain areas of Fort Campbell, putting in over ten miles of water systems. On that day, at approximately 1:00 p.m., Plaintiff was injured when he was

struck by an automobile driven by Sergeant First Class Roger Richardson.  Plaintiff suffered a significant loss of memory with regard to the accident and the events of the day.

At the time of the accident, Richardson was in the transportation division of the Army. Richardson had received forty hours of vehicle training, including road tests, as part of his training. Richardson indicated that at the time of his accident he was driving his 1988 Chevrolet Suburban into the parking lot of Building 3680 for a scheduled meeting.  He testified that he noticed nothing unique or strange about the parking lot upon his arrival and that other vehicles were in the parking lot.  Specifically, Richardson noticed no construction taking place in the parking lot, no barricades, no barriers, no work cones, and no signs signifying construction was occurring in the parking lot.

Richardson parked his car in a marked parking slip next to other vehicles, exited the car, and made his way into the building for his meeting.  As he crossed the parking lot to enter the building, he did not see anything that informed him that construction work was taking place in the parking lot.  Richardson was in the building for approximately ten minutes, as his meeting was cancelled. He then returned to his vehicle, again crossing the parking lot.  Richardson testified that he saw nothing informing him that construction was taking place in the area.  He approached from the driver's side and the rear of the Suburban.

Once in his vehicle, Richardson looked in his rearview mirrors, then turned around and looked out his back window, and then backed out of the parking space.  Richardson testified that at no time did he see anyone in the parking lot behind his vehicle.  After backing out of the space approximately ten feet, he heard a thump and then stopped the vehicle.  Richardson then got out of the vehicle and discovered Plaintiff crouched right next to the back of the Suburban trying to get back on his feet.

2

Jerry Wayne Turner, a carpenter foreman for Foley Construction, was resealing some caulking in the parking lot at Fort Campbell with Plaintiff at the time of the accident. Electronic sensors under the subject parking lot had noticed a minor valve problem that needed correcting. Plaintiff described his responsibilities with regard to the subject valve as follows:

> Mainly removal of the top which could consist of taking caulking, various obstructions that would be in the way of removing the top, setting the truck up to remove the top, setting the picking eyes into the top to be removed, removal of the top, placement of it so that it would be in a place where the fitters could get in to work.

Turner and Plaintiff's work took place in the middle of the parking lot. Turner testified that both he and Plaintiff were wearing orange hardhats on the day of the accident. Plaintiff and Turner did not put up any barriers or cones in the parking lot, nor did either of them serve as a "spotter" for motor vehicles.

Turner testified that, at the time of the accident, he had turned away from to get equipment from the company pickup truck, which bore no markings indicating that it belonged to Foley Construction. The truck was approximately eight feet from the work area. Plaintiff was working behind and at an angle approximately one-half to one parking slip to the passenger side of the Suburban. Plaintiff was bent over caulking. When Turner turned back from the truck, he saw the Suburban backing up, and hollered, and then the Suburban hit Plaintiff. Turner testified that he did not know how long Plaintiff had been in the middle of the parking lot prior to being hit.

Turner testified that he did not see Richardson and did not hear Richardson's vehicle start. Turner indicated that Richardson's vehicle was parked from six to eight feet away from where Plaintiff was working. Turner testified that Richardson pulled out as if he did not see Plaintiff. Turner testified that Richardson backed out of his spot like he was "sort of -- I call it in a hurry. He

3

just backed out pretty fast."

At the time of the accident, Builders Association Outstate Insurance Plan provided insurance coverage for payment of workers' compensation benefits payable to or on behalf of the employees of Foley Construction, including Plaintiff. Plaintiff made a claim for benefits pursuant to Chapter 342 of the Kentucky Revised Statutes and pursuant to the policy of insurance. Builders Association Outstate Insurance Plan has paid to, or on behalf of Plaintiff, $184,686.08.

Plaintiff filed his Complaint against Defendant under the Federal Tort Claims Act ("FTCA") on March 15, 2006, claiming that Richardson, while in the scope of his employment with Defendant, negligently operated his motor vehicle in such a manner as to collide and strike Plaintiff, causing Plaintiff permanent and serious physical injuries. On November 20, 2007, this Court granted Builder's Association Outstate Insurance Plan's Motion to Intervene.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of

4

evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

## I.     APPLICATION OF KENTUCKY TORT LAW

The FTCA is the exclusive remedy for suits against the United States or its agencies sounding in tort.  28 U.S.C. § 2679(a).  Plaintiff's claims fall under the FTCA.  The FTCA grants a limited waiver of sovereign immunity and allows tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674. "The Act waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances."  *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (internal quotation and citation omitted).  To determine the liability of a private person, "we are to look to the law of the state 'where the act or omission occurred.'" *Crider v. United States*, 885 F.2d 294, 296 (5th Cir. 1989) (quoting 28 U.S.C. § 1346(b)).  As the accident occurred in Fort Campbell, Kentucky, this Court will apply Kentucky law to determine liability.

## II.     NEGLIGENCE

A negligence action requires: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury."  *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247

(Ky. 1992).  An absence of any of these elements leads to the failure of the claim.  *Id.*  Whether the defendant breached its duty is a question of fact.  *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003).

Defendant argues that the evidence does not support Plaintiff's claim that Richardson was negligent in his operation of his vehicle.  Defendant asserts that although Turner testified that Richardson "shot" out of the parking space, Richardson could not have been traveling at an advanced speed or Plaintiff would not have survived the bumper to head impact.  Defendant cites to no evidence in support of this contention.  Turner testified that Richardson backed out of the parking spot "in a hurry" and "pretty fast."  Resolving all ambiguities and drawing all reasonable inferences against Defendant, this Court finds that there is a material factual dispute as to whether Richardson was operating the vehicle at a safe speed and thus whether he breached his duty to Plaintiff to operate his vehicle with reasonable care.  *See Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. Ct. App. 2004) (stating that traveling at excess speeds may constitute negligence); *Lovins v. Napier*, 814 S.W.2d 921, 922 (Ky. 1991) (stating that driver of vehicle has duty to exercise ordinary care generally to avoid collisions).

## III.   STATUTORY EMPLOYER IMMUNITY

The Kentucky Workers' Compensation Act provides, in pertinent part, that:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.  For purpose of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

KRS 342.690(1).  KRS 342.610(2)(b) defines a "contractor" as "A person who contracts with

6

another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person."

Defendant asserts the "up-the-ladder" defense, in which an entity "up-the-ladder" from the injured employee and who meets all the qualifications of a "contractor" under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690.  Defendant argues that it is a statutory employer under the definition contained in KRS 342.610, as the work that Plaintiff was doing at the time of the incident was a "regular or recurrent" part of the business of the Maintenance Division of Fort Campbell.  Plaintiff asserts that Defendant does not have "up-the-ladder" employer immunity under KRS 342.690 as the work that Plaintiff was engaged in at the time of the accident was not a regular and recurrent part of the work done by the Fort Campbell United States Army Base.  Intervening Plaintiff also argues that Defendant is not subject to the Kentucky Workers' Compensation Act.

## A.      Statutory Employer Defense in Federal Tort Claims Act Cases

Intervening Plaintiff argues that Defendant is not subject to the Kentucky Workers' Compensation Act as it does not have a workers' compensation program or insurance that would have paid Plaintiff's claim in the event of Plaintiff's employer failing to do so.

Plaintiff initiated this case pursuant to the FTCA which provides a limited waiver of sovereign immunity.  That limited waiver permits tort actions against the federal government, but the United States is liable only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  "[T]he FTCA imposes liability upon the government to the same extent, and in the same manner, as a private individual under 'like,' not identical, circumstances." *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988).  "Because the federal government could never be exactly like a private actor, a court's job in applying the standard

7

is to find the most reasonable analogy." *La Barge v. County of Mariposa*, 798 F.2d 364, 367 (9th Cir. 1986).

A putative "up-the-ladder" "contractor" under KRS 342.690(1) must establish that it has a workers' compensation program or insurance that would have paid plaintiff's claim in the event of plaintiff's employer failing to do so. *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 605 (Ky. 2007). The purpose of KRS 342.610(2) is "to discourage owners and contractors from hiring fiscally irresponsible subcontractors and thus eliminate workers' compensation liability . . . by imposing liability upon the 'up-the-ladder' contractor for compensation to the employees of a subcontractor unless the subcontractor has provided for the payment." *Matthews v. G & B Trucking, Inc.*, 987 S.W.2d 328, 330 (Ky. Ct. App. 1998).

Defendant can not directly pay workers' compensation benefits to Plaintiff, because Congress has never authorized it to do so. In this aspect, Defendant diverges from its private counterparts - other principal employers in the commonwealth of Kentucky. However, Defendant imposed a contractual obligation on Foley Construction, requiring Foley to provide and maintain during the entire performance of the contract "[c]overage complying with State laws governing insurance requirements, such as those requirements pertaining to Workman's Compensation and Occupational Disease Insurance." The Court finds that, in imposing this requirement upon Foley Construction, Defendant sought to comply with the purpose of KRS 342.610(2) in the only means available. The Court finds that this is sufficiently "like" a private employer obtaining workers' compensation benefits so as to allow Defendant to take advantage of "up-the-ladder" immunity if it qualifies under the rest of the definition of "contractor" KRS 342.610(2).

In its supplemental brief, Defendant brings to this Court's attention *Davis v. Hensley*, No.

2007-SC-66-DG, 2008 Ky. LEXIS 149 (Ky. June 19, 2008).  In *Davis,* the Kentucky Supreme Court decided that state government entities cannot rely upon the "up-the-ladder" employer defense, because the Kentucky Workers' Compensation Statute provides that only "persons" can be contractors for purposes of the defense and the Kentucky statutory definition of "persons" does not include state or local governments.  *Id.* at *5.  The Court finds that this decision does not affect the Court's finding that Defendant may take advantage of "up-the-ladder" immunity if it qualifies under the rest of the definition of "contractor" KRS 342.610(2) as the FTCA grants a waiver of sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  "The Act says that it waives sovereign immunity under circumstances where the United States, if a *private person*, not the United States, if a state or municipal entity would be liable."  *United States v. Olson*, 546 U.S. 43, 45-46 (2005) (internal quotation omitted).  Therefore, the fact that the Kentucky Supreme Court in *Davis* stated that Kentucky agencies and municipalities cannot avail themselves of the "up-the-ladder" statutory employer defense has no impact on the issue before this Court.  Pursuant to the jurisdictional authority of the FTCA, the Court must decide where a private entity, in similar circumstances, would have the availability of the defense.

**B.     Regular or Recurrent**

Defendant asserts that the work in which Plaintiff was engaged at the time of the accident represents the type of maintenance and repair work which is a regular and recurrent part of the work performed by the Maintenance Division of Public Works at Fort Campbell.  Defendant states that the only reason Plaintiff performed the work on the day of the accident was because his employer, Foley Construction, was either still under contract with the Army Corps of Engineers and the repair

involved a system that was the subject of said contract or the work was related to a warranty that obligated the contractor to resolve problems within a set period following completion of construction.  Defendant indicates that, otherwise, such work represents the customary and normal services provided by the Maintenance Division of Public Works and, therefore, Defendant is afforded the same exclusive remedy workers' compensation defense extended to Plaintiff's employer.

At issue is whether the work that Plaintiff was engaged in at the time of the accident was a regular or recurrent part of Defendant's business at Fort Campbell.  "'Recurrent' simply means occurring again or repeatedly.  'Regular' generally means customary or normal, or happening at fixed intervals.  However, neither term requires regularity or recurrence with the preciseness of a clock or calendar."  *Daniels v. Louisville Gas & Elec. Co.*, 933 S.W.2d 821, 824 (Ky. Ct. App. 1996).

> Work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market.  It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

> The test is relative, not absolute.  Factors relevant to the "work of the . . . business," include its nature, size, and scope as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform.  Employees of contractors hired to perform major or specialized demolition, construction, or renovation projects generally are not a premises owner's statutory employees unless the owner or the owners of similar businesses would normally expect or be expected to handles such projects with employees.  Employees of contractors hired to perform routine repairs or maintenance that the owner or owners of similar businesses would normally be expected to handle with employees generally are viewed as being statutory employees.  Whether a project is customized

10

to the premises owner's needs is irrelevant.

*Cain*, 236 S.W.3d at 588 (internal citations omitted).

The contract between Defendant and the Foley Company contains a Warranty of Construction, stating in pertinent part:

> 20.1.2  This warranty shall continue for a period of 1 year from the date of final acceptance of the work.  If the Government takes possession of any part of the work before final acceptance, this warranty shall continue for a period of 1 year from the date the Government takes possession.
>
> 20.1.3  The Contractor shall remedy at the Contractor's expense any failure to conform, or any defect.  In addition the Contractor shall remedy at the Contractor's expense any damage to Government-owned or controlled real or personal property, when that damage is the result of - -
>
> > (a) The Contractor's failure to conform to contract requirements; or
> >
> > (b) Any defect of equipment, material, workmanship, or design furnished.
>
> 20.1.4 The Contractor shall restore any work damaged in fulfilling the terms and conditions of this clause.  The Contractor's warranty with respect to work repaired or replaced will run for 1 year from the date of repair or replacement.

Plaintiff testified that, at the time of the accident, the pipe had already been laid in the subject parking lot, the area had already been prepared, and it had been closed up when it was discovered that one of the valves had a problem.  Defendant asserts that this demonstrates that Foley Construction was operating under the warranty provision of the contract.  Defendant states that it is clear that the United States had taken possession of the subject parking lot as the parking lot was in working order.

The evidence demonstrates that the subject parking lot was in use by Fort Campbell personnel on the date of the accident and was not cordoned off in any way.  Plaintiff himself testified that the job being performed in the subject parking lot was not a construction job.  As the

Government had taken possession of the subject parking lot, the Plaintiff's work on the date of the accident was pursuant to the warranty provision of the contract. Thus, this Court must determine whether the repair of the valve was the type of work that is a regular or recurrent part of the business of Fort Campbell.

Fort Campbell is essentially a small municipality. The Maintenance Division of Public Works at Fort Campbell is responsible for the physical plant maintenance that permits the base to operate. The services performed by the Maintenance Division of Public Works include, among others, building repair and maintenance, maintenance and repair of roadways and other areas permitting vehicular and pedestrian travel, and maintenance and repair of sewer lines, heating and cooling systems, and water lines. In his declaration, Larry Martin, Chief of the Maintenance Division of Public Works, stated that the work in which Plaintiff was engaged in on the date of the accident is the very type of work that the Maintenance Division of Public Works is charged to address whenever there is a problem with an aspect of the Central Energy Plant or the pipelines leading to or away from the plant. Martin stated that if Foley Construction had not been under contract with Defendant, the Maintenance Division of Public Works would have addressed the problem. Martin stated that the work that Plaintiff was performing on the date of the accident is the type of work that the Maintenance Division has completed in the past and will be required to perform in the future, as repairs require.

The evidence demonstrates that the work in which Plaintiff was engaged at the time of his accident is customary to the business of Fort Campbell. Such work is completed by the Maintenance Division of Public Works and would have been completed by the Maintenance Division in this case had not Foley Construction been under contract with Defendant. Thus, this Court finds that this work

12

was a regular part of Defendant's business at Fort Campbell.  *See id.*  Defendant, therefore, meets the definition of "contractor" under KRS 342.610(2)(b) and is entitled to the immunity provided by KRS 342.690(1).

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.